**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **FRANNZO SMITH**, <br> **also known as "Zo,"** <br><br> **Defendant.** | Criminal Case No. 16-121-5 (RDM) |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Defendant Frannzo Smith is charged with one count of conspiracy to distribute and possess with intent to distribute 280 grams or more of cocaine base in violation of 21 U.S.C. § 846, and one count of unlawful use of a communications facility to facilitate the commission of a drug felony in violation of 21 U.S.C. § 843(b).  Smith appeared for a detention hearing before Judge Royce Lamberth on July 19, 2016.  At that hearing, the prosecution argued that wiretap and other evidence showed that Smith was both a redistributor of cocaine base for Bryan Gaymon and a narcotics customer.  In support of this contention, the government pointed to electronic and physical surveillance evidence, as well as other evidence, including evidence that Smith spoke and met with Gaymon on a regular basis and that Smith admitted that his voice was contained on audio recordings of wiretaps of Gaymon's cellular telephone.  In response, Smith argued that the government's evidence supported, at most, an inference that Smith was a user of crack cocaine and that Gaymon supplied him with small amounts of the drug to satisfy his habit. He also argued that he does not present a danger to the community and does not pose a risk of flight.

Judge Lamberth ordered Smith detained pending trial and issued a written memorandum setting out his findings of fact and conclusions of law in support of that decision.  Dkt. 27. Weighing the four factors specified in 18 U.S.C. § 3142(g), Judge Lamberth found by clear and convincing evidence that no condition or combination of conditions of pretrial release would reasonably assure the safety of the community.  *Id.* at 8-10.  First, Judge Lamberth concluded that the nature and circumstances of the offense—which involved the distribution of a controlled substance—supported pre-trial detention.  *Id.* at 9.  Second, he concluded that the weight of the evidence against Smith was strong, also favoring detention.  *Id.*  Third, Judge Lamberth found that Smith's history and characteristics weighed *against* detention.  In particular, he noted that Smith's minimal criminal history did not "point[ ] to continued distribution"; that the quantities of drugs that Smith purchased were small; that he is by his own admission an addict who might benefit from a rehabilitation program; and that he has substantial family support.  *Id.*  Fourth, Judge Lamberth concluded that Smith's release would pose a danger to the community because Smith allegedly had his own customer base for narcotics distribution and might continue to sell drugs if released.  *Id.*

Weighing those factors together, Judge Lamberth concluded that Smith's history and characteristics did not outweigh the factors supporting detention and, accordingly, ordered Smith detained in advance of trial.  *Id.* at 13.  Smith then filed a motion to vacate the detention order under 18 U.S.C. § 3145.  Dkt. 28.  The government opposed Smith's motion, Dkt. 40, and Smith filed a reply the following day, Dkt. 42.

## DISCUSSION

Invoking 18 U.S.C. § 3145, Smith requests that the Court vacate Judge Lamberth's detention decision and, in its place, release him subject to certain conditions.  He repeats his

contention that the evidence is consistent, at most, with a conclusion that he was a drug user. Dkt. 28 at 1-2.  Smith also argues that the evidence against him is not "overwhelming," *id.* at 2; that, as Judge Lamberth noted, his personal history and characteristics weighed in favor of pretrial release, *id.* at 3; and that court-ordered release under the High Intensity Supervision Program ("HISP") would address the concerns raised by the government, *id.* at 3-4.  Smith adds that he has resided at the same Virginia address with his mother for fifteen years and that he has worked for his father in the construction business for four years.  *Id.* at 3.  That job, according to Smith, remains available.  *Id.*  Based on all of this, Smith maintains that "suitable release conditions can be fashioned," and he requests release under the HISP.  *Id.* at 3-4.

The government disagrees.  It argues first that 18 U.S.C. § 3145 does not authorize one Article III judge to review a detention decision rendered by another Article III judge.  Dkt. 40 at 5-6.  The government further argues that because Smith has been indicted for an offense carrying a maximum sentence of ten years or more, 18 U.S.C. § 3142(e)(3)(A) establishes a rebuttable presumption that no conditions or combination of conditions will reasonably assure that he will appear as required to protect the safety of the community.  *Id.* at 6-7.

The government also contends that the four factors specified in 18 U.S.C. § 3142(g) weighs in favor of continued detention.  Dkt. 40 at 7.  First, in the government's view, the nature of the offense charged and the strength of the evidence against Smith support detention.  Smith is charged with being a member of a conspiracy to distribute 280 grams or more of cocaine base, and, although the evidence indicates that Smith purchased only small amounts of cocaine base to redistribute, the evidence against him includes approximately 592 wiretap interceptions of conversations in which Smith participated, along with other conversations in which Smith was mentioned.  *Id.* at 8.  In the government's view, this evidence, taken together, shows that Smith

was not merely a drug user, but that he was also engaged in the redistribution of cocaine base. *Id.* at 9. The government argues that placement in the HISP will not assure the safety of the community because Smith allegedly played multiple roles in an extensive narcotics distribution conspiracy. *Id.* at 10–11. Because this conduct allegedly occurred while Smith was living with his mother and working for his father, according to the government, restricting Smith to his home—and, perhaps, to his work—will do little to mitigate the danger he poses to the community.

## A.

As an initial matter, the Court agrees with the government that 18 U.S.C. § 3145 does not authorize review or an appeal of the detention order issued by Judge Lamberth. In relevant part, that provision provides:

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.

18 U.S.C. § 3145(b). Review is thus available only where a person has been ordered detained by either (1) a magistrate judge, or (2) "a person other than a judge of a court having original jurisdiction over the offense" or "a Federal appellate court." Here, Smith was initially ordered detained by an Article III judge of this Court, and this Court has original jurisdiction over the offense in this case. *See* 18 U.S.C. § 3231. The fact that Judge Lamberth acted in lieu of a magistrate judge does not change this, and it is clear that Judge Lamberth entered his order in his capacity at a United States District Judge. Dkt. 27 at 14. Accordingly, 18 U.S.C § 3145 does not grant another judge of this Court authority to hear an appeal of Judge Lamberth's decision.

**B.**

In his reply brief, Smith argues that even if review is unavailable under 18 U.S.C. § 3145, the Court maintains inherent authority to reconsider detention decisions where the original decision was premised on "a clear error of law" or where "changed circumstances" support release. Dkt. 42 at 1. That statement of the law is undoubtedly correct. This Court has inherent authority to reconsider its own decisions, *see, e.g.*, *United States v. Dieter*, 429 U.S. 6, 8 (1976) (per curiam); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 47–48 (D.D.C. 2013); *United States v. Coughlin*, 821 F. Supp. 2d 8, 17 (D.D.C. 2011), but the current record does not support relief for Smith. That record fails to evince any "clear error of law," "changed circumstances," or any other factor warranting reconsideration of Judge Lamberth's detention order.

Smith first argues that Judge Lamberth's decision was premised on the mistaken belief that he has been charged with the distribution of 280 grams or more of cocaine base, when, in fact, he was charged only with conspiracy to distributed 28 grams of cocaine base. Dkt. 28 at 1 n.1. But, in fact, Judge Lamberth was correct. Smith is charged with being a member of a *conspiracy* to distribute and to possess with intent to distribute 280 grams or more of cocaine base. Dkt. 11 at 3. It is true that the indictment identifies Smith's *personal* conduct within that conspiracy as involving 28 or more grams of cocaine base. *Id.* That specification of Smith's personal conduct does not, however, alter or limit the charge against him or the applicability of the rebuttable presumption that he poses a danger to the community. *See* 18 U.S.C. § 3142(e)(3)(A); *see also United States v. Edmond*, 52 F.3d 1080, 1104 (D.C. Cir. 1995) (explaining that "the amount of drugs attributable" to Smith depends on "the scope of his agreement with his co-conspirators" (quoting *United States v. Saro*, 24 F.3d 283, 288 (D.C. Cir.

1994))).  Thus, far from committing a "clear error of law," Judge Lamberth correctly

characterized the indictment and the applicability of the presumption.

Nor did Judge Lamberth misunderstand the salient facts.  He noted, for example, that "the

value of each of Mr. Smith's purchases was low" and that Smith "made statements consistent

with his being primarily a user rather than a redistributor."  Dkt. 27 at 9–10.  He nonetheless

found that "Smith did indeed complete distribution[-]related tasks for various members of the

conspiracy and there is a risk that, if released, he would continue to engage in such activity."  *Id.*

at 10.  That conclusion is well supported by the record.

Most reasonably construed, Smith's argument is not challenging a mistake of law or fact

that Judge Lamberth made, but rather the ultimate conclusion that he reached in balancing the

factors specified in 18 U.S.C. § 3142(g).  The Court does not doubt that this case presents a close

question, given Smith's family ties and the evidence that Smith was a drug addict who made

only small purchases of drugs.  The evidence showed, however, that Smith likely engaged in

distribution—even if only on a small scale—and that he performed various "distribution[-]

related tasks for various members of the conspiracy."  Dkt. 27 at 10.  Judge Lamberth weighed

this evidence, along with the remaining factors, and reasonably concluded that there was clear

and convincing evidence that no conditions would reasonably assure the safety of the

community.

The Court is also unconvinced that "changed circumstances" warrant reconsideration of

Judge Lamberth's order.  In his reply brief, Smith asserts that he is now seeking release into the

HISP, that he did not make this request at his initial detention hearing, and that this request,

accordingly, constitutes a "changed circumstance."  Dkt. 42 at 1-2.  It is unclear from the record

whether this request is, in fact, new.  The docket notes, for example, that Smith's motion "for

Release from Custody into the High Intensity Supervision Program (HISP)" was denied.  July 19, 2016, Minute Order.  Thus, even if the HISP was not specifically discussed at the original detention hearing, this docket entry indicates that Judge Lamberth considered the issue.  That conclusion, moreover, is bolstered by the fact that the HISP is a common condition on pretrial release and would not have evaded Judge Lamberth's attention in his assessment of whether "no condition or combination of conditions [would] reasonably assure . . . the safety of any person and the community."  18 U.S.C. § 3141(e).  And, in any event, a new argument is not a change in circumstances.  There is no reason why Smith could not have raised the possibility of HISP supervision at his original detention hearing.

The Court, accordingly, concludes that there is no basis on the present record to vacate Judge Lamberth's detention order.  At the same time, the Court recognizes that the initial decision to detain Smith presented a close question, and it does not intend to preclude Smith from seeking reconsideration based on evidence of changed circumstances or other good cause.  The Court merely concludes that a request that Smith be subject to the HISP is not such a circumstance and that the assignment of this matter to a different judge, standing alone, does not merit reconsideration of Judge Lamberth's well-considered decision.

## CONCLUSION

For the reasons discussed above, defendant's motion to vacate the detention order is **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  August 10, 2016